UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:24-CR-00110 |
| | ) | |
| LINDEN URBANO Defendant. | ) | |

**SENTENCING MEMORANDUM**
**ON BEHALF OF LINDEN URBANO**

Comes now, the defendant Linden Urbano, by counsel J. Michael Woods and Maryrachel Durso of Stracci Law Group, and files this Sentencing Memorandum and attached sentencing exhibits (A through I) to assist this Court in the exercise of its discretion in sentencing Mr. Urbano.

## I. SENTENCE REQUEST

Mr. Urbano awaits sentencing after having pled guilty to the Indictment charging him with **Count 1: Production of Child Pornography** in violation of 18 U.S.C. § 2251(a) & (e), which carries a penalty of fifteen (15) to thirty (30) years imprisonment, a term of supervised release of five (5) years to life, and fines and assessments as provided by law, **Count 2: Attempted Production of Child Pornography** in violation of 18 U.S.C. § 2251(a) and (e), which carries the same penalties as Count 1, and **Count 3: Receipt of Child Pornography** in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1), which carries a penalty of five (5) to twenty (20) years imprisonment, a term of supervised release of five (5) years to life, and fines and assessments as provided by law, and admitting to the conduct

outlined in **Stipulated Offense 1** in violation of 18 U.S.C. § 2251(a) & (e), which carries the same penalties as Counts 1 and 2, and **Stipulated Offense 2** in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1), which carries the same penalties as Count 3. The guideline range in his final presentence investigation report is nine hundred and sixty (960) months.

A below-guidelines sentence of one hundred and eighty-eight (188) months is appropriate given the nature and circumstances of the offense coupled with the history and characteristics of Mr. Urbano. In light of the factors fully explored below, Mr. Urbano respectfully requests the Court to:

1. Impose a sentence of one hundred and eighty-eight (188) months;
2. Recommend to the Federal Bureau of Prisons that Mr. Urbano serve the last twelve (12) months of his sentence in the residential reentry center (halfway house);
3. Recommend to the Federal Bureau of Prisons placement in a facility as close as possible to Demotte, Indiana;
4. Recommend to the Federal Bureau of Prisons that he receive credit for the time he spent in state custody for related conduct under cause number 37D01-2410-F6-000992 and the time he spent in federal custody under this cause for a total of 716 days (23 months, 16 days); and
5. Waive any imposition of a fine.

## II. PROCEDURAL HISTORY

On October 11, 2024, Mr. Urbano was arrested and subsequently charged with Count I: Resisting Law Enforcement, a Level 6 Felony, in Jasper Superior Court.[1] On November 21, 2024, the Government indicted Mr. Urbano in this case for: Count 1: Production of Child Pornography, Count 2: Attempted Production of Child Pornography, and Count 3: Receipt of Child Pornography.[2] The conduct for which he was charged in cause number 37D01-2410-F6-000992 is related conduct to Count 1 of the Indictment. On November 22, 2024, Mr. Urbano was arrested and was ordered detained pending a detention hearing.[3] On November 26, 2024, the Court held a hearing on detention and ordered that Mr. Urbano remain detained pending trial.[4] On January 27, 2026, Mr. Urbano pled guilty to Counts 1, 2, and 3 of the Indictment and admitted committing Stipulated Offenses 1 and 2. He is scheduled to be sentenced on November 2, 2026.[5]

## III. TERMS OF THE PLEA AGREEMENT

Mr. Urbano pled guilty to Counts 1, 2, and 3 of the Indictment as well as admitted to committing Stipulated Offenses 1 and 2. As to Count 1, the parties agree that the offense involved the use of a computer and therefore two (2) levels are added.[6] The parties also agree that Mr. Urbano recklessly created a substantial risk of death or serious

---

[1] *State of Indiana v. Linden Urbano*, JASPER COUNTY SUPERIOR COURT 1, Cause Number 37D01-2410-F6-000992.
[2] Docket Entry ("D.E.") 1.
[3] D.E. 8.
[4] D.E. 14.
[5] D.E. 40.
[6] U.S.S.G. § 2G2.1(b)(5)(B)(i).

bodily injury to another person in the course of fleeing from law enforcement and therefore another two (2) levels are added.[7] The plea agreement allows the parties to argue to the Court regarding the U.S.S.G. § 2G2.1(b)(2)(A) and U.S.S.G. § 4B1.5(b) enhancements.[8]

As to Count 2, the parties agree that agree that the offense involved the use of a computer and therefore two (2) levels are added,[9] but disagree on whether the U.S.S.G. § 4B1.5(b) enhancement should apply.[10]

As to Count 3, the parties agree that Mr. Urbano knowingly engaged in distribution and therefore two (2) levels are added;[11] that Mr. Urbano engaged in a pattern of activity involving the exploitation of a minor and therefore five (5) levels are added;[12]and that the offense involved the use of a computer and therefore two levels are added.[13] While the plea agreement allows for Mr. Urbano to argue that fewer than six hundred (600) images, he does not dispute this enhancement, and therefore five (5) levels are added.[14]

As to Stipulated Offense 1, the parties agree that Mr. Urbano knowingly engaged in distribution and therefore two (2) levels are added[15] and that the offense involved the

---

[7] U.S.S.G. § 3C1.2.
[8] While Mr. Urbano acknowledges that under the applicable statues and case law these enhancements apply, he argues below that they produce an absurd result warranting deviation from the recommended guidelines range.
[9] U.S.S.G. § 2G2.1(b)(5)(B)(i),
[10] Again, While Mr. Urbano acknowledges that under the applicable statues and case law this enhancement applies, he argues below that its application produces an absurd result, and the Court should impose a below guidelines sentence.
[11] U.S.S.G. § 2G2.2(b)(3)(F).
[12] U.S.S.G. § 2G2.2.(b)(5).
[13] U.S.S.G. § 2G2.2(b)(6).
[14] U.S.S.G. § 2G2.2(b)(7).
[15] U.S.S.G. § 2G2.2(b)(3).

use of a computer and therefore two (2) levels are added pursuant to U.S.S.G § 2G2.1(b)(6)(B)(i). The plea agreement allows the parties to argue to the Court as to whether the U.S.S.G. § 2G2.1(b)(2)(A) and U.S.S.G. § 4B1.5(b) enhancements should apply.[16] Additionally, in return for his admission to Stipulated Offense 1, the government agrees that Mr. Urbano will not be charged federally in the Northern District of Illinois for the conduct outlined in Stipulated Offense 1.

As to Stipulated Offense 2, the parties agree that Mr. Urbano knowingly engaged in distribution and therefore two (2) levels are added,[17] that Mr. Urbano engaged in a pattern of activity involving the exploitation of a minor and therefore five (5) levels are added,[18] and the offense involved the use of a computer and therefore two levels are added.[19] While the plea agreement allows for Mr. Urbano to argue that fewer than six hundred (600) images, he does not dispute this enhancement, and therefore five (5) levels are added.[20] Additionally, in return for his admission to Stipulated Offense 2, the government agrees that Mr. Urbano will not be charged federally in the Northern District of Indiana for the conduct outlined in Stipulated Offense 2.

Additionally, Mr. Urbano agrees to forfeit to the United States any interest he has in the Apple iPhones involved in the commission of these offenses and consented to the entry of orders of forfeiture pursuant to Federal Rule of Criminal Procedure 32.2.

---

[16] Once again, while Mr. Urbano acknowledges that under the applicable statues and case law these enhancements apply, he argues below that they produce an absurd result in his case, which warrants deviation from the recommended guidelines range.
[17] U.S.S.G. § 2G2.2(b)(3)(F).
[18] U.S.S.G. § 2G2.2.(b)(5).
[19] U.S.S.G. § 2G2.2(b)(6).
[20] U.S.S.G. § 2G2.2(b)(7).

Further, Mr. Urbano agrees to pay restitution to the victims of Counts 1, 2, and 3, Stipulated Offenses 1 and 2, and the victims of any relevant conduct in an amount to be determined by the Court.[21] Additionally, Mr. Urbano agrees that he shall be ordered to pay at least $3,000 in restitution to any victim identified in the child pornography images or videos found in his possession should those victims seek restitution.[22]

The parties also agree that Mr. Urbano is entitled to a two (2) level reduction for his acceptance of responsibility and an additional one (1) level reduction for his timely notification of his intention to plead guilty.[23] Lastly, the government agrees to recommend the Court impose a sentence at the bottom of the applicable guideline range.

## IV. UNITED STATES SENTENCING GUIDELINE CALCULATION

### A. CRIMINAL HISTORY COMPUTATION

Mr. Urbano's only criminal history is Possession of Marijuana at the age of nineteen (19).[24] Though the case was dismissed upon successful completion of probation, it is still assessed one (1) criminal history point.[25] This places Mr. Urbano in criminal history category I.[26]

### B. GUIDELINE PROVISIONS

Despite being in criminal history category I, the recommended sentence outlined in the presentence investigation report is nine hundred and sixty (960) months.[27] It should

---

[21] 18 U.S.C. § 2259.
[22] 18 U.S.C. §§ 3369 and 3663(a)(3).
[23] U.S.S.G. §§ 3E1.1(a) and (b)
[24] Presentence Investigation Report, at 21, *State of Indiana v. Linden Urbano*, DEKALB COUNTY SUPERIOR COURT, Cause Number 17D01-1510-CM-000742.
[25] Presentence Investigation Report, at 21, 4A1.1(c), 4A1.2(f).
[26] Presentence Investigation Report at 21, U.S.S.G. Chapter 5, Part A.
[27] Final Presentence Investigation Report, at 25.

be noted that based on Mr. Urbano's calculated total offense level of forty-three (43) and a criminal history category of I, the guideline imprisonment range is actually *life.*[28] However, the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range, therefore the guideline term of imprisonment is reduced from life to nine hundred and sixty (960) months. Presentence Investigation Report, at 25, U.S.S.G. § 5G1.2(b). Mr. Urbano acknowledges that the computation presented in his final presentence investigation report is correct under current guidelines, however Mr. Urbano contends this is an absurd result given the underlying facts and circumstances of his case coupled with his history and characteristics. He argues that application of the disputed enhancements in circumstances where the underlying sex acts and/or sexual conduct depicted in the images and recordings is consensual and legal, produces an outlandish result under the sentencing guidelines. If these enhancements did not apply, the resulting guideline sentencing range for Mr. Urbano would be one hundred and eighty-eight (188) to two hundred and thirty-five (235) months (a guidelines calculation reflecting exclusion of the disputed enhancements is attached hereto as Exhibit "A"). Mr. Urbano's request for a sentence departing from the calculated guidelines range is fully explored below.

**V. CREDIT TIME ALLOCATION**

On October 11, 2024, Mr. Urbano was arrested and subsequently charged in Jasper Superior Court for conduct related to Count 1 of the Indictment.[29] This case remains

[28] Presentence Investigation Report, at 25.
[29] Presentence Investigation Report, at 21.

pending.[30] The State of Indiana held Mr. Urbano in custody in that matter from October 11, 2024, through October 15, 2024.[31]

Mr. Urbano has been detained in federal custody since his arrest on November 22, 2024[32] for a total of 711 days (23 months, 11 days) including the sentencing date of November 2, 2026.

Mr. Urbano respectfully requests the Court recommend to the Federal Bureau of Prisons that he receive credit for the time he spent in state custody under cause number 37D01-2410-F6-000992 (October 11, 2024, through October 15, 2024) and in federal custody under this cause for a total of 716 days (23 months, 16 days) pursuant to 18 U.S.C. § 3585.[33]

## VI. APPLICATION OF 18 U.S.C. § 3553(a)

"The court shall impose a sentence sufficient, but not greater than necessary to comply with the need for the sentence imposed to (A) . . . reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed vocational training, medical care, or other correctional treatment in the most effective manner."[34]

---

[30] Presentence Investigation Report, at 21.
[31] Presentence Investigation Report, at 2.
[32] Presentence Investigation Report, at 2.
[33] 18 U.S.C. § 3585(b) states "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence."
[34] 18 U.S.C. § 3553.

The court, in determining a particular sentence to be imposed, shall consider the history and characteristics of the defendant and the nature and circumstances of the offense.[35]

### A. HISTORY AND CHARACTERISTICS OF LINDEN URBANO

#### *i. LACK OF FAMILY SUPPORT AND STABILITY DURING CHILDHOOD*

Mr. Urbano was born in Lafayette, Indiana.[36] His parents separated when he was very young, and he was initially raised by his mother in Roselawn, Indiana, along with his five (5) maternal half siblings.[37] However, at the age of five (5), his mother relinquished custody, and Mr. Urbano moved in with his father in DeMotte, Indiana.[38] At just five (5) years old, Mr. Urbano was forced to adjust to a new parent, a new home, and being an only child. Additionally, his mother only stayed tangentially involved; Mr. Urbano describes her involvement as "occasional."[39]

Moreover, while Mr. Urbano's father did provide him with a roof over his head in the form of a trailer, they lived poor.[40] Family members describe that Mr. Urbano had "hardly . . . anything at all" and provide the example that "if you wanted something to drink [at Mr. Urbano's dad's trailer], you would have to drink it out of an old yogurt cup."[41] Additionally, Mr. Urbano's father would come home from work and consume alcohol every night, becoming both physically and verbally aggressive.[42] Mr. Urbano

---

[35] 18 U.S.C. § 3553.
[36] Presentence Investigation Report, at 22.
[37] Presentence Investigation Report, at 22.
[38] Presentence Investigation Report, at 22.
[39] Presentence Investigation Report, at 22.
[40] Exhibit B at 1.
[41] Exhibit B at 1.
[42] Presentence Investigation Report, at 22.

had a childhood of instability and abuse, describing his home life as "volatile" and stating he "no positive memories of his father from his childhood."[43]

### *ii. SEXUAL ORIENTATION*

While Mr. Urbano already faced many struggles at home, he also struggled with being a gay teenager in a conservative family. Mr. Urbano came out as homosexual to his family as a teenager.[44] Due to his family's strong religious beliefs, Mr. Urbano was judged and made to feel like an outcast within the family.[45]

Additionally, his mental health suffered, and he often turned to the use of drugs and alcohol to cope, as explored below. Scientific studies have showed that minority stress[46] serves as a key vulnerability factor for sexual compulsivity.[47] "[D]ifficulties of emotional regulation arise from early exposure to stressful, interpersonally rejecting environments" and such dysregulation can cause depression, anxiety, and sexual compulsivity.[48] It is likely that the rejection that Mr. Urbano experienced at a young age directly led to mental health struggles, substance use issues, *and* risky sexual behavior.

---

[43] Presentence Investigation Report, at 22.
[44] Presentence Investigation Report, at 22.
[45] Presentence Investigation Report, at 22, Exhibit G.
[46] Minority stress refers to the stress to which lesbian, gay, and bisexual individuals are exposed because of social stigma. Ilan H. Meyer, *Prejudice, Social Stress, and Mental Health in Lesbian, Gay, and Bisexual Populations: Conceptual Issues and Research Evidence*, 129 PSYCHOL. BULL. 674 (2003).
[47] Sexual compulsivity refers to frequent, hard to control sexual fantasies, urges, or behaviors. Black, The Epidemiology and Phenomenology of Compulsive Sexual Behavior, 5 CNS SPECTRUMS 26 (2000).
[48] Pachankis et al., A Minority Stress–Emotion Regulation Model of Sexual Compulsivity Among Highly Sexually Active Gay and Bisexual Men, 34 HEALTH PSYCHOL. 829 (2015) (citing Shields, Cicchetti & Ryan, The Development of Emotional and Behavioral Self-Regulation and Social Competence Among Maltreated School-Age Children, 6 DEV. & PSYCHOPATHOLOGY 57 (1994).

### *iii. SUBSTANCE ABUSE HISTORY*

As outlined in the Presentence Investigation Report, Mr. Urbano began consuming alcohol at age fifteen (15) and using marijuana at age sixteen (16).[49] While at first his alcohol consumption and marijuana use were limited to weekends, he began smoking daily in college, which persisted up until his arrest in the case.[50] During high school, he also took psychedelic mushrooms, and he experimented with MDMA (also known as "Molly" or "Ecstasy") in 2021.[51]

In 2023, Mr. Urbano became severely addicted to cocaine.[52] He used cocaine daily for six months, which resulted in erratic behavior and paranoia.[53] He was in active addiction during the commission of all of the instant offenses, and continued to use cocaine until his arrest in this case.[54]

The Texas Christian University Drug Screen was administered to Mr. Urbano, resulting in a score of eleven (11).[55] According to this instrument, a composite score of six (6) or more indicates a severe disorder and suggests a higher level of need for drug treatment.[56] Mr. Urbano agrees that he has a substance abuse problem and wishes to seek treatment in the most effective manner available to him, as he has never participated in substance abuse treatment before.[57]

---

[49] Presentence Investigation Report, at 23-24.
[50] Presentence Investigation Report, at 23-24.
[51] Presentence Investigation Report, at 24.
[52] Presentence Investigation Report, at 24.
[53] Presentence Investigation Report, at 24.
[54] Presentence Investigation Report, at 24.
[55] Presentence Investigation Report, at 24.
[56] Presentence Investigation Report, at 24.
[57] Presentence Investigation Report, at 24.

### *iv. MENTAL AND EMOTIONAL HEALTH*

Mr. Urbano began experiencing symptoms of depression and suicidal ideation when his electronic devices were seized prior to the filing of this case.[58] He went so far as to voluntarily relinquish his firearms to his grandparents to prevent him from taking his own life.[59] He reports that his feelings of depression and suicidal ideation only intensified upon his actual arrest and detention.[60] He wishes to address these mental health struggles through mental health counseling.[61]

### *v. RESIDENTIAL REENTRY HOUSE*

As set forth in the proposed supervision conditions, Mr. Urbano "has a history of substance abuse and /or alcohol abuse" and "a history of mental health issues" and conditions are recommended to "provide defendant with available treatment services to reduce the risk of recidivism . . . [and] to provide defendant rehabilitation."[62]

Mr. Urbano agrees that he will need substantial reentry assistance but argues this should occur *prior* to his release from imprisonment. 18 U.S.C. § 3624(c)(1) states that "[t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable

[58] Presentence Investigation Report, at 23.
[59] Presentence Investigation Report, at 23.
[60] Presentence Investigation Report, at 23.
[61] Presentence Investigation Report, at 23.
[62] Presentence Investigation Report, at 31.

opportunity to adjust to and prepare for the reentry of that prisoner into the community."[63]

"RRCs provide a safe, structured, [and] supervised environment" where inmates can "gradually rebuild their ties to the community."[64] Essential programming at RRCs includes substance abuse programs and access to medical and mental health care.[65] Placement in the RRC for a period of twelve months allows Mr. Urbano to be in a structured environment where he can address his substance abuse issues and mental health struggles all while allowing him the opportunity for rehabilitation and reducing the risk of recidivism.

Additionally, the sentencing letters submitted to the Court outline Mr. Urbano's extremely hardworking and motivated character. They describe how he has an "entrepreneurial spirit," is "one of the hardest working people,"[66] is someone who "never pass[es] up an opportunity to prosper,"[67] is "self-motivated,"[68] and is someone with a "good work ethic."[69] Any programming the Court can recommend for him will be

---

[63] Pursuant to 18 U.S.C. § 3621(b), the Bureau of Prisons considers the following five factors when determining placement of a convicted person: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) *any statement by the court that imposed the sentence-- (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate*; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

[64] Federal Bureau of Prisons, *Completing The Transition*, https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp, (last visited October 20, 2026).

[65] *Id.*

[66] Exhibit C.

[67] Exhibit D at 1.

[68] Exhibit E.

[69] Exhibit G.

maximized in effect by Mr. Urbano's strong work ethic and commitment to bettering himself.

Mr. Urbano respectfully requests the court to recommend to the Bureau of Prisons that he serve the last twelve (12) months of his imprisonment in a residential reentry center.

***vi. PHYSICAL HEALTH***

Mr. Urbano suffers from multiple health issues that have made detention unusually difficult. He suffers from proctitis with ulceration, or inflammation of the lining of the rectum resulting in open sores and breaks in the rectal tissue.[70] He reports continual issues related to this condition and the need for a gastroenterology exam.[71]

Additionally, Mr. Urbano has navicular syndrome, which causes the congenital bone of the foot to become inflamed.[72] He received reconstructive surgery in his right foot for this condition but is experiencing pain in his left foot now.[73] Additionally, he requires custom orthotics at all times just to do daily activities such as walking short distances and standing for the period of time it takes to shower, and the orthotics he presently has are worn beyond their medical usefulness.[74]

***vii. LACK OF CRIMINAL HISTORY***

While the sentencing guidelines generally provide relief to defendants who have minimal criminal history, Mr. Urbano does not receive this benefit because, regardless

[70] Presentence Investigation Report, at 23.
[71] Presentence Investigation Report, at 23.
[72] Presentence Investigation Report, at 23.
[73] Presentence Investigation Report, at 23.
[74] Presentence Investigation Report, at 23.

of his criminal history category, the recommended guidelines sentence (without the adjustment provided for in U.S.S.G. § 5G1.2(b)) is life imprisonment. Mr. Urbano respectfully requests that the Court take note of his lack of criminal history. Mr. Urbano's only criminal history is Possession of Marijuana at the age of nineteen (19).[75] This case was dismissed upon successful completion of probation.[76]

### *viii. EDUCATION AND EMPLOYMENT HISTORY*

Mr. Urbano has been employed since the age of fifteen (15), when he began working for his family's seal coating business.[77] After graduating from high school, he obtained his Bachelor's degree in telecommunications from Ball State University.[78] During college, he worked as an Uber driver and began his own business called Cardinal Cleanup, which provided pressure washing, seal coating, and junk removal services.[79] After college, he started another business called Hoosier Excavating. After that company unfortunately failed due to the cost of purchasing equipment, he again drove for Uber, which continued until his arrest.[80] Mr. Urbano's level of education ability to work while in school, and his hardworking nature, as discussed above in the context of RRCs, show he is capable of being a productive, motivated member of the community.

---

[75] Presentence Investigation Report, at 21, *State of Indiana v. Linden Urbano*, DEKALB COUNTY SUPERIOR COURT, Cause Number 17D01-1510-CM-000742.
[76] Presentence Investigation Report, at 21.
[77] Presentence Investigation Report, at 24.
[78] Presentence Investigation Report, at 24.
[79] Presentence Investigation Report, at 24.
[80] Presentence Investigation Report, at 24.

### *ix. GOOD CHARACTER*

As the Court is aware, many people in Mr. Urbano's life took the time to write letters to the Court (see Exhibits B through H). While these letters touch on his struggles with addiction, and his difficult upbringing, they also state that despite his struggles, he is thoughtful, genuine, and caring. They describe him as "the kind of person who likes to help people,"[81] His cousin describes how when she broke her foot, Mr. Urbano drove her roughly three hundred (300) miles round trip to her post-operative appointments.[82] His college roommate describes how when his car broke down, Mr. Urbano came with his truck to tow the car and help him make it back to the apartment complex and how, another time he drove twenty (20) miles to help his roommate's aunt (someone Mr. Urbano had never met), who was stranded on the side of the highway with a flat tire.[83] His grandmother describes how Mr. Urbano would come over in high school to help her do yardwork, change her light bulbs, and wash her ceiling fans.[84] His father describes how he would always stop to help if he saw someone broken down on the side of the road and how he made a video on bullying to send to high schools in the area to make sure no one else experienced the bullying the way he did.[85] Mr. Urbano's generous, caring, and thoughtful nature comes through in each of the letters submitted to the Court, and he asks that the court take this good character into consideration.

---

[81] Exhibit G.
[82] Exhibit B at 2.
[83] Exhibit D at 1.
[84] Exhibit E.
[85] Exhibit F.

## B. NATURE AND CIRCUMSTANCES OF THE OFFENSES

Beginning in 2022, when Mr. Urbano was twenty-five (25) years old, he began using Snapchat[86] and Grindr[87] to find hookups.[88] Throughout the next approximately two (2) years, he exchanged photographs and videos with other Snapchat and Grindr users, occasionally meeting up with them in person to have sex.[89]

In the summer of 2022, Minor Victim 3 ("MV3"), who was sixteen (16) years old at the time, began communicating with Mr. Urbano on Grindr and Snapchat. The two hooked up and stayed in touch for a short time after beginning to communicate. During this time, Mr. Urbano asked MV3 for photographs and videos of his anus and MV3 agreed. MV3 sent photographs of his anus as requested and sent unsolicited pictures of himself engaged in masturbation. During a search of Mr. Urbano's electronic devices, law enforcement found photographs and videos that MV3 sent to Mr. Urbano, which showed MV3's exposed anus.

---

[86] Snapchat is a social media service for sending pictures, messages, and videos that are only available to be seen for a limited period of time. *Snapchat*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/snapchat (last visited October 25, 2026).

[87] Grindr is a social networking and dating application aimed at the LGBTQ+ community. *What is Grindr?*, GRINDR HELP CTR. https://help.grindr.com/hc/en-us/articles/1500012478721-What-is-Grindr (last visited October 25, 2026). It is commonly used to find casual sex rather than long term relationships. See Simon Doherty, *A No-Bullshit Guide to Using Grindr for the First Time*, VICE, https://www.vice.com/en/article/how-to-use-grindr-beginners-guide/ (last visited October 25, 2026) ([Grindr] is basically a 24/7 merry-go-round of sex in your immediate locale . . . If you are looking to date . . . you're going to have to work for it by wading through hordes of people who just want to [have sex].")

[88] A hookup is a one-time meeting for purposes of engaging in casual, sexual contact, with the understanding that no future contact or relationship is implied. *See* hookup, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/hookup (last visited October 25, 2026).

[89] Grindr Service Agreement Term 1.1 is "NO USE BY UNDERAGE PERSONS. The Grindr Services are intended ONLY for legal adults. NO PERSONS UNDER THE AGE OF EIGHTEEN (18) YEARS (OR THE AGE OF MAJORITY IN PLACES WHERE EIGHTEEN (18) YEARS IS NOT THE AGE OF MAJORITY) ARE AUTHORIZED TO ATTEMPT, DIRECTLY OR INDIRECTLY, TO VIEW, DOWNLOAD, POSSESS, OR OTHERWISE USE THE GRINDR SERVICES." (EMPHASIS in original). Grindr, *Legal*, https://trust.grindr.com/en-US/legal (last visited October 26, 2026).

In December of 2022, Minor Victim 2 ("MV2") communicated with Mr. Urbano on Snapchat. MV2 was sixteen (16) years old at the time. MV2 initially told Mr. Urbano he was eighteen (18) years old but later told him he was sixteen (16). During these conversations, Mr. Urbano requested sexually explicit images of MV2, including pictures of MV2's anus and penis.

In January of 2023, Minor Victim 4 ("MV4") began speaking to Mr. Urbano on Grindr. He told Mr. Urbano he was seventeen (17) years old and was indeed seventeen (17). While Mr. Urbano was in Chicago with a few of his friends, Mr. Urbano and MV4 agreed to meet to have sexual intercourse at a park near MV4's house (in Chicago) and did meet up to have sex. While having sexual intercourse, Mr. Urbano used his cell phone to record a video of himself anally penetrating MV4 with his penis and later sent the video to a friend.

Later in 2023, Minor Victim 5 ("MV5") began speaking with Mr. Urbano on Snapchat. MV5 was seventeen (17) at the time. During these conversations, MV5 sent a video to Mr. Urbano, which showed MV5 exposing his bare anus.

On October 11, 2024, Minor Victim 1 ("MV1") met Mr. Urbano on Grindr. MV1 told Mr. Urbano he was sixteen (16) years old (and was indeed sixteen (16) years old), and MV1 and Mr. Urbano arranged to meet up the same evening to have sexual intercourse. The two later drove together to a nearby field, where they had anal and oral sex. Jasper County Sheriff's deputies reported to the field in response to a report of a suspicious vehicle. Mr. Urbano drove off and fled from law enforcement for approximately three (3) quarters of a mile. He stopped the vehicle in the driveway of his

home, got out of the vehicle, and was arrested. Upon subsequent seizure and review of Mr. Urbano's cell phone, FBI agents discovered a total of five (5) videos where MV1's anus is exposed, one of which shows Mr. Urbano anally penetrating MV1 with his penis.

All five (5) victims were of the age of consent in their respective states and all five (5) victims engaged in legal, consensual sexual acts and/or contact with Mr. Urbano. Importantly, Mr. Urbano's criminal activity stems solely from the filming and receipt of images, *not* from the underlying sexual conduct.

### C. APPLICATION OF THE DISPUTED ENHANCEMENTS PRODUCES AN ABSURD RESULT THAT IS FAR GREATER THAN NECESSARY TO SERVE THE PURPOSES SET FORTH IN 18 U.S. CODE § 3553(a)

"The Federal Sentencing Guidelines help guide district court judges to select penologically appropriate sentences for criminal offenders. The operative term here is "guide.'"[90] Though a district court must always consult the guidelines and take them into account,[91] the ultimate length of a sentence (within statutory limits) is committed to the sound discretion of the district court judge.[92] While the "guidelines' recommendations are a helpful tool for judges, . . . they may not account adequately for the nuances of an individual case."[93] As a result, a district court is free to deviate from the guidelines, so long as it offers an adequate statement of its reasons.[94] The guidelines do not adequately

[90] *United States v. Gonzalez*, 3 F.4th 963, 964 (7th Cir. 2021).
[91] *Booker v. United States*, 543 U.S. 220, 259 (2005).
[92] *See ex,, United States v. Nania,* F.3d 824, 838 (7th Cir. 2013).
[93] *United States v. Gonzalez* at 265.
[94] *See United States v. Gill,* 824 F.3d 653, 664 (7th Cir. 2016) (citing *U.S. v. Abebe* 651 F.3d 643, 656 (7th Cir. 2011))

account for the nuances of Mr. Urbano's case, and this Court has ample reasons to deviate from the guidelines.

***i. USE OF A COMPUTER (U.S.S.G § 2G2.1(b)(6)(B)(i))***

While Mr. Urbano acknowledges that the enhancement for use of a computer applies in his case, he asks the Court to consider how this enhancement has not kept pace with technological advancements. The enhancement was created a time where computer use was much less common, and the United States Sentencing Commission has documented that this enhancement applies in an increasing number of cases as computer use has been become increasingly widespread. In fact, the enhancement applied to more than ninety-five (95) percent of non-production child-pornography offenders in fiscal years 2019, demonstrating its limited capacity to distinguish between typical and more culpable offenders.[95] The enhancement has become effectively ubiquitous. While it remains part of the guidelines and Mr. Urbano acknowledges its application in his case, its routine application supports considering whether it —and other effectively ubiquitous enhancements—meaningfully reflect Mr. Urbano's individual culpability or instead add punishment for conduct now essentially inherent in the typical commission of his offenses.

***ii. U.S.S.G. § 2G2.1(b)(2)(A) and U.S.S.G. § 4B1.5(b)(1)***

The federal age for which a person is deemed to be a child for purposes of being photographed or recorded in a sexual manner is under the age of eighteen (18).[96]

---

[95] U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* at 4 (2021).
[96] Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204 (1894).

However, the age at which those same people may lawfully engage in sexual acts and contact is a subject matter reserved to the States.[97] In Mr. Urbano's case, those ages are sixteen (16) in Indiana,[98] sixteen (16) in Michigan,[99] and seventeen (17) in Illinois.[100] Due to the difference in the federal definition of minor for the purposes of child pornography laws and the states' age of consent, both U.S.S.G. § 2G2.1(b)(2)(A) and U.S.S.G. § 4B1.5(b)(1) (hereafter "the Chapter Four Enhancement") as written punish sexual acts or sexual contact even when the sexual acts or sexual contact is legal. As a result, defendants such as Mr. Urbano, who engage in legal, consensual sexual acts or contact but record or photograph such conduct are punished for the underlying *lawful* conduct itself. Additionally, the Chapter Four Enhancement concludes that a defendant such as Mr. Urbano is a repeat and dangerous offender against minors, when once again, the underlying sexual acts or contact was legal, consensual, and carried no danger to the sixteen (16) and seventeen (17) year olds engaged in the activities. While Mr. Urbano takes issue with the broad applicability of these enhancements to conduct that is otherwise legal, he does not ask the Court to make an *ad hoc* decision to ignore precedent regarding the applicability of these guideline enhancements. Instead, he implores the court to use its sentencing discretion to deviate from the recommended guidelines sentence, as the guidelines here cause a clearly absurd and unjust result.

---

[97] *See, e.g.,* U.S. Dep't of Health & Human Servs., *Statutory Rape: A Guide to State Laws and Reporting Requirements* (2004), https://aspe.hhs.gov/reports/statutory-rape-guide-state-laws-reporting-requirements (last visited October 24, 2026).
[98] Indiana Code § 35-42-4-9.
[99] MLCS § 750.520b-e.
[100] 720 ILCS 5/11-1.50.

### a. PURPOSE FOR AGE CAP ON CHILD PORNOGRAPHY

When first enacted, the federal child pornography laws only applied to depictions of individuals under the age of sixteen (16).[101] As part of the Child Protection Act of 1984, the U.S. Congress raised the upper age limit for federal child pornography from sixteen (16) to eighteen (18).[102] In explaining this change, Congress reported that the rationale was not to protect sixteen (16) and seventeen (17) year olds, but instead that it is often impossible to locate the child victim in a child pornography case, and that often the images themselves are the only evidence of the child's age.[103] This made it extremely difficult for the prosecution to prove beyond a reasonable doubt that a child was under the age of sixteen (16) if the child showed any signs of puberty.[104] In connection with the 1984 amendment, the Department of Justice expressed no view on whether Congress should increase the age, but expressly recognized the "countervailing consideration that . . . the federal child pornography statutes would . . . extend their reach under the new constitutional standard to 16 and 17 year olds, whom for some purposes society regards as adults."[105] Thus, Mr. Urbano's case sits exclusively within an intentional overbreadth meant solely to better assist the prosecution of child pornography depicting minors under the age of sixteen (16). The only stated congressional purpose for raising the age limit to eighteen (18) —a purpose explicitly flagged as potentially concerning by the DOJ—is not

[101] 18 U.S.C. § 2253 (1977).
[102] Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204 (1984).
[103] H.R. Rep. No. 98-536, at 3 (1983). Document is attached hereto as "Exhibit I" for the Court's convenience.
[104] H.R. Rep. No. 98-536, at 3 (1983).
[105] H.R. Rep. No. 98-536, at 14 (1983).

served at all by the prosecution in Mr. Urbano's case, where the minors and their ages are known and readily provable to be sixteen (16) and seventeen (17).

To further punish Mr. Urbano for underlying acts that are themselves legal does not serve any purpose outlined in 18 U.S.C. § 3553. That fact does not mean that a crime was not committed, but it is certainly relevant in determining a just punishment—one that is not greater than sufficient to punish Mr. Urbano's conduct —which this Court has the authority and responsibility to do under 18 U.S.C. § 3553(a). Mr. Urbano ask the Court to explore exactly what it being punished by applying these enhancements. In Count 1, Mr. Urbano produced five (5) videos of lawful, intrastate sexual conduct. However, he did so using a device that had traveled in interstate commerce, and the subject matter of the videos was "substantially related to the closely regulated interstate market of child pornography."[106] In Count 2, Mr. Urbano used a channel of interstate commerce to request an image that is closely regulated in interstate commerce. However, the requested subject matter of the image could be lawfully viewed by Mr. Urbano *in person* both in Mr. Urbano's location[107] and Minor Victim 2's location.[108] In Count 3, Mr. Urbano again used a channel of interstate commerce that is closely regulated in interstate commerce. And again, the requested subject matter of the image could be lawfully viewed *in person*. In Stipulated Offense 1, Mr. Urbano produced a video of lawful, intrastate sexual conduct. However, once again, he did so with a device that had traveled in interstate commerce, and the subject matter was "substantially related to the closely regulated interstate

[106] *United States v. Olson*, 317 F.App'x 534, 536 (7th Cir. 2008).
[107] Indiana Code § 35-42-4-9.
[108] *Mich. Comp. Laws* § 750.520d(1)(a) (2025).

market of child pornography."[109] And lastly, in Stipulated Offense 2, Mr. Urbano used a channel of interstate commerce that is closely regulated in interstate commerce to receive a graphic video of Minor Victim 5 that could be lawfully viewed in person in both Mr. Urbano's location and Minor Victim 5's location.[110] The crimes here seem to be the derivative effects each image and/or video had on interstate commerce, not the underlying conduct itself.

**b. APPLICATION OF THE U.S.S.G. § 2G2.1(b)(2)(A) AND CHAPTER FOUR ENHANCEMENTS DEFIES LOGIC**

In a case where the child pornography depicts a victim who is under the age of consent, the disputed enhancements make sense. Further punishing illegal sexual acts and contact is logical in that situation. However, an enhancement for sexual acts or sexual contact when that contact is itself legal and consensual, defies logic.

Mr. Urbano's recordings and receipt of recordings of legal sexual acts on five (5) occasions exposes him to eighty (80) years imprisonment, which is essentially a life sentence for a man of Mr. Urbano's age. By way of comparison, a person who commits First-Degree Murder has the same base offense level as Mr. Urbano.[111] A person who commits Second-Degree Murder with the same criminal history as Mr. Urbano who received the top of the guidelines range sentence for that offense would receive

---

[109] *United States v. Olson*, 317 F.App'x 534, 536 (7th Cir. 2008).
[110] *18 Pa. Cons. Stat.* § 3122.1 (2025).
[111] 18 U.S.C.S. app. § 2A1.1 (base offense level 43).

approximately one third (1/3) of Mr. Urbano's guidelines sentence, which is still less than the Government's requested sentence for Mr. Urbano.[112]

Recent sentencing decisions in this circuit display the inequities in the guidelines. For example, a defendant who downloaded 1,292 images and 424 videos of child pornography, including toddlers, videos depicting bestiality, and material categorized as "pre-teen hardcore" received a sentence of ninety-four (94) months.[113] In sentencing letters, which totaled over one hundred (100) pages, victims spoke of "torture," "nightmares of being raped," "the perpetual scarlet letter that is this abuse," and "plac[ing] broken toys on the floor to hurt the feet of bad men if they sneak into the house."[114] Another defendant picked up a thirteen year old girl and a fifteen year old girl at a shopping mall, along with their fifteen year old male friend, telling them he was a record producer.[115] He then gave them marijuana, locked the girls in his house, repeatedly threatened to shoot the fifteen-year-old male if the girls did not have sex with him, and raped the thirteen -year-old girl repeatedly over the course of three hours. He received a sentence of six hundred and sixty (660) months.[116] Yet another defendant possessed over 120,000 graphic images and 274 video files on his computer hard drive, 133 images in his bedroom DVD collection, and a 20-minute video tape depicting the defendant having sexual contact with child between the ages of three (3) and four (4)[117].

---

[112] 18 U.S.C.S. app. § 2A1.2, U.S.S.C. Guidelines Manual, Ch. 5, pt. A. (base offense level 38, guidelines range 235-293 months).
[113] *United States v. Eash*, 679 F.Supp.3d 768 (N.D. Ind. 2023).
[114] *United States v. Eash*, 679 F.Supp.3d 768, 773 (N.D. Ind. 2023).
[115] *United States v. Bonty*, 383 F.3d 575, 576-577 (7th Cir. 2004).
[116] *United States v. Bonty*, 383 F.3d 575, 578 (7th Cir. 2004).
[117] *United States v. Olson*, 317 F.App'x 534, 538 (7th Cir. 2008).

He received an aggregate sentence of two hundred and sixty (260) months[118]. These are only a few examples of offenses that are far more egregious on their faces yet result in a guidelines range far less than that of Mr. Urbano.

## VII. CONCLUSION

Mr. Urbano understands the seriousness of the offense and accepts full responsibility for his actions. The requested sentence in no way minimizes the seriousness of the offense; rather it prevents a result that shocks the conscience. The requested sentence provides just punishment for the offense, affords adequate deterrence to criminal conduct, and provides Mr. Urbano with correctional treatment in the most effective manner, all while protecting the public. While Mr. Urbano recognizes the breadth of the departure he is requesting; the requested sentence is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

/s/ J. Michael Woods
J. Michael Woods, #26649-53
email: JMWoods@StracciLaw.com

/s/ Maryrachel Durso
Maryrachel Durso, #36112-53
email: MDurso@StracciLaw.com

STRACCI LAW GROUP
11890 Broadway
Crown Point, Indiana 46307
voice: (219) 525-1000
fax: (219) 525-1000

[118] *United States v. Olson*, 317 F.App'x 534, 538 (7th Cir. 2008).